IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAURA ANN ENGELSMAN,

    Plaintiff,

v.                                                                                   No. 13-CV-227 JCH/CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on *Plaintiff's Motion to Reverse or Remand with Supporting Memorandum* ("Motion"), filed on October 15, 2013, (Doc. 18); *Defendant's Response to Plaintiff's Motion to Reverse and Remand Administrative Agency Decision* ("Response"), filed on December 6, 2013, (Doc. 19); and Plaintiff's *Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand* ("Reply"), filed on December 23, 2013, (Doc. 20).

On March 3, 2009, Laura Ann Engelsman (née Morehead) filed an application for disability insurance benefits and supplemental security income, alleging disability beginning January 14, 2008. (Administrative Record ("AR") 155–69). Her application was denied on July 27, 2009, (AR 13, 82–85), and also upon reconsideration on August 18, 2010, (AR 13, 89–92). Ms. Engelsman filed her request for a hearing on September 8, 2010, (AR 13, 89–92); a hearing occurred on July 13, 2011 before Administrative Law Judge ("ALJ") Michelle K. Lindsay (AR 29–63). Ms. Engelsman and Molly Meloy-Kelly, an impartial vocational expert, testified at the hearing. (AR 29–63). The ALJ issued her

opinion on September 15, 2011, finding that Ms. Engelsman is not disabled under 20 C.F.R. § 416.920(g). (AR 21). Ms. Engelsman filed an application for review by the Appeals Council, which was summarily denied, (AR 3–6), making the decision of ALJ Lindsay the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Engelsman complains that ALJ Lindsay committed reversible, legal error by: (1) failing to make required findings when determining Ms. Engelsman's residual functional capacity or adequately developing the record; (2) considering Ms. Engelsman's pain and credibility in a way that was contrary to law; and (3) adopting the vocational expert's inherently unreliable testimony. (Doc. 18 at 14).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not apply the correct legal standards when she considered the medical source opinions in the record in making her residual functional capacity finding, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court recommends that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were

applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security

income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

**III. Background**

Ms. Engelsman initially applied for disability benefits alleging a debilitating back injury, depression, and post-traumatic stress disorder ("PTSD"). (AR 174). Ms. Engelsman allegedly suffered a workplace injury in January 2008 which precipitated her

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

disability application; a fall from a second-floor balcony in November 2010 worsened her condition. The administrative record includes her medical records, earnings records, work history report, disability application, hearing testimony, and State agency consulting physician evaluations, which were used by the ALJ to evaluate Ms. Engelsman's disability claim.

At step one, ALJ Lindsay determined that Ms. Engelsman had not engaged in substantial gainful activity since the date of her disability application. (AR 15). At step two, the ALJ found Ms. Engelsman to be severely impaired with the following impairments: degenerative disc disease of the lumbar spine, status post burst fracture at L2, status post lumbar fusion, residuals from fracture of the right ankle, thoracic facet syndrome, bilateral sacroiliac joint syndrome, lumbar post laminectomy syndrome, residuals from a right calcaneal fracture, and chronic obstructive pulmonary disease. (AR 15). She found Ms. Engelsman's anxiety and depression to cause minimal limitations and be non-severe. (AR 15). At step three, the ALJ determined that none of Ms. Engelman's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 416.920(d), 416.925, and 416.926. (AR 17). The ALJ proceeded to step four, and made residual functional capacity ("RFC") findings that Ms. Engelsman could perform a limited range of sedentary work, as that term is defined in 20 C.F.R. § 416.967(a), and was unable to perform any of her past relevant work. (AR 17–19). At step five, ALJ Lindsay considered and adopted the testimony of the vocational expert, found that Ms. Engelsman was capable of performing work that exists in significant numbers in the national economy, and concluded that she was not disabled. (AR 19–21).

### A. *Ms. Engelsman's Testimony*

In making the RFC determination, ALJ Lindsay considered Ms. Engelsman's testimony at the hearing and other self-reports about her symptoms. (AR 18). Ms. Engelsman testified that because of nerve damage in her right foot, she experiences continued pain and numbness and is unable to stand or walk for extended periods. (AR 40–41). She also stated that she experiences low back pain and has difficulty sitting for long periods, has difficulty sleeping at night, and is unable to breathe normally without the use of a nebulizer throughout the day. (AR 40–42, 44–45).

### B. *Medical Evidence Considered by the ALJ*

The ALJ also discussed the objective medical evidence in the record, consisting of treatment notes and reports of various doctors and health care professionals. Ms. Engelsman originally applied for disability after suffering a work-related injury while lifting a heavy trash can that caused her right gluteal and right leg pain. (AR 292). In November 2009, Ms. Engelsman suffered a fall from 25 feet and sustained a burst fracture of L2, (broken back), and a right calcaneal fracture (broken right ankle). (AR 18).

Ms. Engelsman underwent back surgery, and the ALJ noted that she recovered with no complications. (AR 369). Her medical records dated January 5, 2010 showed improvement in her condition, and x-rays indicated satisfactory alignment of the implanted instrumentation. (AR 369). The x-rays also showed the instrumentation was intact and in place. (AR 369). The ALJ remarked that Ms. Engelsman's treating physician opined that she was doing very well, and refilled her pain medication prescription one final time. (AR 369). However, the medical records show Ms. Engelsman was actually seen by Physician Assistant Stephen Lummus during that visit, not by her treating

physician, J. Brett Gentry, M.D. (AR 369). Therefore, it was Mr. Lummus who opined that she was improving, referred her to a pain specialist, and recommended a follow-up appointment in two to three months to take additional x-rays of her spine. (AR 369). The Court notes that a physician assistant is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(d) and 416.913(d), and therefore cannot give the Commissioner a medical opinion. *See* SSR 06-03p, 2006 SSR LEXIS 5, *4.

      The ALJ then turned to Ms. Engelsman's medical records dated April 16, 2010, from a follow-up visit with Certified Family Nurse Practitioner Lezlie Harris. (AR 389). Ms. Engelsman reported that she was feeling good, but had occasional muscle spasms. (AR 389). Ms. Harris wrote that a physical examination revealed that Ms. Engelsman was able to move all of her extremities with no evidence of weakness. (AR 389). Ms. Harris also noted that x-rays of the spine showed that the surgically-implanted hardware was intact, and that Dr. Gentry had reviewed the x-rays because the office visit would be Ms. Engelsman's last regular appointment. (AR 389). The ALJ pointed out that Dr. Gentry placed no limitations on Ms. Engelsman regarding sitting, standing, walking or lifting and carrying, and aside from pain management, did not recommend additional medical treatment or diagnostic evaluations. (AR 389).

      The ALJ then noted that Ms. Engelsman's right calcaneal fracture did not heal well and she experienced right ankle and foot pain, with difficulty standing and walking for extended periods of time. (AR 18). The ALJ did not identify which medical records or medical source opinions she relied upon in drawing that conclusion. She found that she would limit Ms. Engelsman to sedentary work because of her right ankle and foot pain. (AR 18).

The ALJ then discussed Ms. Engelsman's medically-documented chronic obstructive pulmonary disease ("COPD"), related to her long history of smoking nicotine cigarettes, which caused her shortness of breath and difficulty breathing. (AR 19). The ALJ stated that several doctors recommended smoking cessation, but Ms. Engelsman had not complied, which indicated her symptoms to be not significant. (AR 19).

ALJ Lindsay then weighed the medical source opinions of Mark A. Werner, M.D. and Bob B. Johnson, PhD., the State agency consulting physicians ("consulting physicians") who never treated or examined Ms. Engelsman. Dr. Werner made his findings on April 7, 2010, assigned no environmental limitations to Ms. Engelsman, and opined that she could frequently climb ramps and stairs, balance, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds and stoop. (AR 394–401). Dr. Werner concluded that she would be able to function with that RFC within 12 months from her two-story fall, or by December 1, 2010. Dr. Johnson evaluated her medical records on June 22, 2010, and only placed mild limitations on her with regards to maintaining social functioning and concentration, persistence, and pace. (AR 420). The ALJ summarized the limitations that Dr. Werner and Dr. Johnson placed as medical opinions that Ms. Engelsman could eventually perform "light work" and was not disabled.

The ALJ reasoned that since no treating or examining physician had offered the opinion that Ms. Engelsman was disabled, that she would grant "significant weight" to the consulting physicians' opinions that Ms. Engelsman would be able to perform light work by the end of 12 months. (AR. 19). However, she also stated that she could not agree that Ms. Engelsman was able to perform "the full range of light work," only that she concurred with their finding of non-disability. (AR 19). ALJ Lindsay did not discuss, or

8

otherwise indicate that she weighed, any other medical source opinions in the record.

### C. *Pain and Credibility*

ALJ Lindsay remarked that Ms. Engelsman made inconsistent statements and engaged in drug-seeking behavior that undermined her credibility. (AR 19). Ms. Engelsman's back doctor instructed her to seek pain management from one primary care physician, but she continued to receive pain medication from various doctors throughout New Mexico. She also refused any pain treatment that was not related to narcotic pain management. (AR 575). The ALJ also noted that Ms. Engelsman must have had impure motives for applying for disability benefits because her back was not broken at the time of her application. (AR 19). ALJ Lindsay concluded that Ms. Engelsman's statements concerning the intensity, persistence, and limiting effects of her symptoms were unsupported by the objective medical evidence in the record, and therefore her testimony lacked credibility. (AR 18).

### D. *RFC Determination*

The ALJ found that Ms. Engelsman is able to perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a), as follows:

> [Ms. Engelsman] is able to lift and carry ten pounds occasionally, push and pull ten pounds occasionally, sit for six hours in an eight-hour workday and stand and walk for two hours in an eight-hour workday. Further, [Ms. Engelsman] can occasionally balance, stoop, crouch, kneel and crawl, and occasionally climb stairs and ramps. She can never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme cold and humidity, avoid concentrated exposure to slippery, uneven surfaces, and avoid concentrated exposure to pulmonary irritants such as fumes, gases, dust odors and poor ventilation.

(AR 17). The added environmental limitations, which were included because of Ms. Engelsman's COPD, had the effect of eroding the base for sedentary work.

E. *Evidence Not Considered in the ALJ Decision*

Ms. Engelsman points out that many of her medical records were not cited or discussed by ALJ Lindsay. Those medical records show that on March 12, 2008, Ms. Engelsman's treating physician, Nur Badshah, M.D., noted that Ms. Engelsman had marked tenderness of her spine, complained of chronic low back pain, and had a straight leg raising test limited to 45 degrees bilaterally. (AR 285). In June 10, 2008, Ms. Engelsman sought treatment from Dr. James Santos, M.D., a physical medicine and rehabilitation specialist. Dr. Santos remarked that Ms. Engelsman exhibited pain behavior, including guarded and stiff movements, abnormal gait, vocalization, and facial grimacing. (AR 293). He diagnosed her with mild spondylosis, minimal degenerative changes, and right sacroiliac joint strain with persistent pain. (AR 293). Ms. Engelsman subsequently underwent therapeutic right sacroiliac joint injections into the affected area. (AR 293).

On February 3, 2010, Rahul Mehta, M.D. found that, upon reviewing x-rays of Ms. Engelsman's back, she had chronic compression of L2 and transpedicular fusion from L1 through L3, and that she had lost height over the course of three months. (AR 469). Ms. Engelsman points out that the ALJ did not mention that Ms. Engelsman fell on ice in March 2010, which caused her to experience more complications and pain. (AR 389). On April 8, 2011 Ms. Engelsman was referred to Irwin J. Isaacs, M.D. for back pain. (AR 622). Dr. Isaacs made various observations during his examination, including that Ms. Engelsman had atrophy in her right calf, weakness with right hip flexion and knee extension, that she was not able to do any plantar flexion or dorsiflexion with the right foot, her patellar reflexes were zero bilaterally, and the Patrick's test was positive with

right side greater than left. (AR 622–23).

**IV. Analysis**

    *A.*    <u>Points of Error</u>

In her Motion, Ms. Engelsman alleges ALJ Lindsay committed several reversible errors. Ms. Engelsman contends that (1) the ALJ failed to make required findings or develop the record regarding Ms. Engelsman's ability to sit, or include limitations from Ms. Engelsman's anxiety and depression; (2) the ALJ's consideration of Ms. Engelsman's pain and credibility was contrary to law; and (3) the ALJ's reliance on the vocational expert's testimony was contrary to law because it was inherently unreliable and inconsistent with the Dictionary of Occupational Titles. (Doc. 18 at 14). The Commissioner responds that ALJ Lindsay did not commit any of the alleged errors, that she properly evaluated the evidence in the record, and substantial evidence supports her final decision. (Doc. 19).

    *B.*    <u>RFC Finding</u>

ALJ Lindsay found that Ms. Engelsman had the RFC to perform a restricted range of sedentary work. (AR 17). Ms. Engelsman contends that the ALJ's failure to include a more restrictive sitting limitation was legal error, because evidence in the record shows that she cannot sit for six hours in an eight-hour workday, and that she requires the ability to change positions every 20 to 30 minutes. (Doc. 18 at 15). She also argues that the ALJ erred by failing to include functional limitations associated with Ms. Engelsman's diagnosed anxiety and depression. (Doc. 18 at 20–21).

Ms. Engelsman argues that the ALJ erred by not including a more restrictive

sitting limitation in the RFC. At the hearing, Ms. Engelsman testified that she must elevate her legs throughout the day to reduce swelling in her feet and alleviate her back pain, and that she is only able to sit for 20 to 30 minutes at a time before she must walk around for five to ten minutes to "unstiffen" herself before sitting back down again. (AR 45, 48). Ms. Engelsman contends that the ALJ erred in finding that no objective evidence supports that testimony, because the finding is contradicted by substantial evidence in the record. According to Ms. Engelsman, her medical records indicate that she consistently complained of severe back pain, and her treating physician diagnosed her with positive straight leg raising, severely restricted range of motion, abnormal gait, lower extremity numbness, absent patellar reflexes, and positive Patrick's test. (AR 285, 293, 369, 622–23). She further argues that the ALJ was selective in considering the evidence in the record, which is contrary to law. Indeed, the vocational expert testified that when either of those sitting limitations was added to the hypothetical individual able to perform sedentary work, no jobs existed in significant numbers in the regional or state economy. (AR 59, 60). Therefore, if either of the alleged sitting limitations were ascribed to Ms. Engelsman as she contends was proper, the ultimate finding of disability would be affected.

     Ms. Engelsman also argues that ALJ Lindsay failed to consider all of the limiting effects of her impairments related to her diagnosed anxiety and depression. (Doc. 18 at 20). She cites numerous medical opinions in the record which discuss or diagnose these impairments. (AR 286, 286, 288, 322, 356–57, 364, 404–05, 430, 437, 443–45, 448–450, 458, 461, 526, 580, 582–83, 636). An ALJ is required to consider the effects and limitations of all of a claimant's impairments, even those that are not considered severe.

20 C.F.R. §§ 416.929, 416.945. However, the ALJ did not discuss any such limitations at step four.

Ms. Engelsman also challenges the consideration and weighing of the various medical opinions in the records. She points out that the ALJ only weighed the State agency consulting physicians' opinions—granting them significant weight—but then deviated from their opinions without explanation. Ms. Engelsman contends this was error, and that it is confusing, because the ALJ was required to explain any such discrepancy. (Doc. 18 at 15). She also argues that "[t]he RFC finding did not include proper weighing of the voluminous evidence from treating doctors and surgeons" and that the ALJ relied on the consulting physician opinions for an erroneous reason. (Doc. 18 at 18, 19). The Commissioner did not address any of these the arguments in her Response, but claims that the ALJ carefully considered the entire record and substantial evidence supports her determination that Plaintiff retained the RFC to perform a reduced range of sedentary work activity. (Doc. 19 at 10).

The Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.157(d). A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the nature and severity of the claimant's impairment(s), including their symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). "RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." SSR

13

96-6p, 1996 SSR LEXIS 3, at *11. The level of deference a non-examining physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *See Langley*, 373 F.3d at 1119 (citations omitted). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, No. 03-2170, 366 F.3d 1078, 1084 (10th Cir. Apr. 6, 2004) (unpublished) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); SSR 96-6p, 1996 SSR LEXIS 3, at *5–6.

The ALJ accorded significant weight to the consulting physician opinions that Ms. Engelsman was able to do light work by the end of 12 months, for the sole reason that "no treating or examining physician has offered the opinion that [Ms. Engelsman] is disabled." (AR 19). ALJ Lindsay acknowledged that as non-examining, non-treating physicians, she could not give their opinions controlling weight, but that their opinions may be "weighed and considered as those of highly qualified physicians who are experts in the evaluation of disability claims." (AR 19). The ALJ concluded that she disagreed with the consulting physicians' finding that Ms. Engelsman could perform a light range of

work, but that she concurred with their finding of non-disability. (AR 19).

As explained above, ALJ Lindsay should have weighed the consulting physicians' opinions in consideration of the "deference factors." Ms. Engelsman argues that the sole reason for granting those opinions significant weight is erroneous, because there is no requirement that she submit an opinion by a treating physician that she is disabled. (Doc. 18 at 18–19). Ms. Engelsman is correct that a medical source's judgment as to a claimant's disability is an opinion on an issue reserved to the Commissioner, and therefore not a "medical source opinion" to be considered pursuant to 20 § 404.1527(a)(2). *See* 20 C.F.R. § 404.1527(d)(1). While the Commissioner must consider all of the medical findings and other evidence supporting a medical source's statement that a claimant is disabled, the final determination of disability is left to the Commissioner. 20 C.F.R. §§ 404.1527(d) and 416.927(d)(1); *see also Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). Therefore, ALJ Lindsay should have considered the medical findings and other evidence supporting a determination of disability, but she could not consider the determination itself as a medical source opinion, and the Court agrees with Ms. Engelsman that the ALJ's reasoning was erroneous.

Further, the Court does not find that the sole factor the ALJ considered in weighing the consulting physicians' opinions falls within the scope of any of the deference factors. ALJ Lindsay failed to draw any correlation between her observation that no treating or examination made a finding that Ms. Engelsman is disabled and the consulting physicians' assessment that Ms. Engelsman could do light work by the end of 12 months. Even if the Court adopts the most expansive view of the deference factors, the decision does not demonstrate that the ALJ considered any of the permissible

factors, and she certainly did not articulate them if she did. The Court must find that the ALJ's analysis was procedurally flawed for relying on an impermissible factor in considering the consulting physicians' opinions.

Last, the ALJ did not adopt the consulting physicians' opinions in their entirety since she found that Ms. Engelsman could only perform a restricted range of sedentary work. The ALJ acknowledged the departure, and explained that she "does not agree that [Ms. Engelsman] can perform the full range of light work." (AR 19). The ALJ stated in an earlier part of the decision that Ms. Engelsman's right ankle and foot pain and poorly-healed calcaneal fracture, and the environmental limitations caused by Ms. Engelsman's COPD, influenced her decision to assign a more restrictive RFC. (AR 18, 19). However, because the ALJ also found that Ms. Engelsman's subjective reports of pain lacked credibility, this Court must assume that other medical evidence or opinions impacted the ALJ's decision to deviate from the opinions of the consulting physicians. Since ALJ Lindsay failed to weigh any of the other medical source opinions in the record as is required, she procedurally erred in her treatment of the medical source evidence in the record. Further, one of the few opinions she actually discussed she erroneously attributed to a treating physician, when it in fact came from a physician assistant, and therefore not an acceptable medical source.

The ALJ's analysis of the medical source opinions is too riddled with errors to allow meaningful review of her RFC determination by this Court. The ALJ's failure to fully explain her reasoning constitutes legal error, and this case will be remanded.

### V. Conclusion

For the reasons discussed above, the Court finds that the ALJ did not follow the

correct legal standards when she considered the medical opinions in the record, and made her RFC determination. The Court does not decide any other issue raised by Ms. Engelsman on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that *Plaintiff's Motion to Reverse or Remand with Supporting Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Proposed Findings and Recommended Disposition.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE